JACOB M. PHILLIPS *vs.* THE MERRIMACK MUTUAL FIRE INSURANCE COMPANY.

The by-law of a mutual fire insurance company, requiring the consent of its directors to the transfer of a policy "when the property insured shall be alienated by sale or otherwise," does not apply to a mere assignment of the amount secured by the policy, although the assignee be in possession of the insured property under a bond for a deed from the original assured.

Such an assignment, like the assignment of any other chose in action, if assented to in any competent way by the company, enables the assignee to sue in his own name upon the policy.

A mutual fire insurance company, authorized to insure property only to three fourths of its value, is nevertheless liable for the whole amount insured on property, which is totally lost, although the property was overvalued by the assured in his application for insurance, but without any fraud or intentional misrepresentation in such overvaluation.

Assumpsit upon a policy of insurance on a dwelling-house and other buildings in Reading, known as the " Littlefield Place." The policy, dated 23d June, 1848, was originally issued to Daniel Flint, and by him assigned to the plaintiff in these words: "I hereby assign and transfer the within policy, to Jacob M. Phillips, for his benefit in case of loss. Daniel Flint." This assignment was assented to by the defendant company as follows: " Assented to, Samuel Merrill, President. And recorded, 1848, November 4. Attest. Samuel Gray, Secretary."

The plaintiff acted as agent for said Daniel Flint, in procuring the original insurance, and in his application to the defendant company set forth the title to the property in these words: " The property belongs to Daniel Flint, of which Jacob M. Phillips has a bond for a deed."

At the trial in the court of common pleas, before *Mellen*, J. it appeared that the plaintiff, when the policy issued, was in possession of the premises under a bond for a deed from said Daniel Flint, dated 1st April, 1841, and that he remained in such possession until the destruction of the buildings by fire, namely, 6th November, 1849. The plaintiff had paid said Flint in part, for said premises, according to the tenor of the bond, but no deed was in fact ever executed by said Flint to the plaintiff, and no other consideration was proved for the assignment of the policy to the plaintiff, than his interest in the premises under the bond. After the fire, the plaintiff gave up his claim to the premises, and the bond was cancelled.

The defendants contended that they were not bound by the assent of their president to the assignment to the plaintiff, without the consent of their directors, and referred to their By-laws, Art. 5, fully set forth in the opinion. On this point the president of the company testified, that he had always acted in the same way, in assenting to the assignment of

policies, and that no objection had been made by the directors or the corporation. Due notice to the defendants of the loss and demand of payment were proved at the trial, but the presiding judge ruled that, upon the foregoing facts, the plaintiff could not recover, and the verdict was for the defendants. The plaintiff excepted to the said ruling.

*J. G. Abbott*, for the plaintiff.

*A. H. Nelson & J. P. Converse*, for the defendants.

METCALF, J. This policy, dated June 23, 1848, was made to Flint, who was the owner of the buildings insured, but who had previously let the plaintiff into possession of them, and had given him a bond for a deed thereof, on his performing certain conditions. The fact, that the plaintiff had such bond, was made known to the defendants when the policy was applied for. On the 4th of November, 1848, Flint made the following writing on the back of the policy: " I hereby assign and transfer the within policy to Jacob M. Phillips, for his benefit in case of loss. Daniel Flint." The president of the company indorsed his assent to this assignment, and both were recorded by the secretary. The insured buildings were afterwards burnt, and the plaintiff now seeks to recover the amount of the loss. The defendants object to his recovery, because, as they insist, their president was not authorized to bind them by his assent to the assignment, but that the assent of the directors was necessary to make the assignment valid. We are of opinion, however, that this objection cannot prevail. The only provision, in the defendants' by-laws, concerning the assignment of policies, is in the fifth article, in these words: " When any property insured shall be alienated by sale or otherwise, the policy shall thereupon be void. But the grantee or alienee, having the policy assigned to him, upon application to the secretary, within sixty days, may, with the consent of the directors, have his policy renewed, and be entitled to all the rights which belong to the person originally insured." This by-law has no application to the present case. It applies only to cases of alienation of the insured property; and it provides, in those cases, for a renewal of the policy to the alienee, with the consent of the directors, if the alienor

has assigned the original policy to him. But there has been no alienation of the insured property, in the case before us. Flint, the assured, owned it at the time of the loss, as well as at the time when it was insured. The only effect, there-fore, of the assignment of the policy to the plaintiff was, to authorize the defendants to pay to him, instead of Flint, the amount of any loss for which they might be liable under the policy. And their assent to the assignment, if duly given, is tantamount to an express promise to pay the plaintiff accord-ingly, and entitles him to maintain an action against them in his own name. *Fuller* v. *Boston Mutual Fire Insurance Com-pany*, 4 Met. 208, 209; *Barrett* v. *Union Mutual Fire Insur-ance Company*, 7 Cush. 175, 181; *Wilson* v. *Hill*, 3 Met. 66, 69. Otherwise, the indorsement of assent to the assignment can have no effect. For Flint had a right to assign his claim under the policy to whom he pleased, without the defendants' assent; but the assignee must have sued it in Flint's name, unless the defendants had promised to pay to the assignee himself. Was then the assent of the defendants to this as-signment so made as to bind them ? We have seen that the assent of the directors was not required by the fifth article of the defendants' by-laws. But their assent, express or implied, was doubtless necessary; if for no other reason, because the third article of those by-laws is, that "the president and directors shall have the management and the direction of all matters and things not otherwise provided for in these regula-tions;" and there is no provision therein concerning such an assignment as this. And we are of opinion that the defend-ants cannot be permitted to deny that the assent given to this assignment was such as to bind them. The president testified "that he had always acted in the same way in assenting to the assignment of policies, and that no objection had ever been made by the directors or by the corporation." This shows, at least, a tacit or implied assent of the directors to this and to other assignments; a ratification of the president's act, if not a previous authority for him to do it; and it is now too late for the defendants to say that the assignment in this case was not made with the assent of the president and

30*

directors. If the defendants could ever have taken this objection successfully, they cannot take it after the assignment had been entered on their records, and allowed to remain there unquestioned, for the space of twelve months, before the loss happened.

It was contended for the defendants, in argument, that this assignment ought not to be held valid, as the consequence would be, that they must lose their lien upon the buildings insured, and the land under them. This cannot be so. It was Flint's interest that was insured, and he continued to be the party insured. He remained a member of the company, and the company retained their lien on his property. The only loss which the defendants could sustain by the assignment to the plaintiff, was the loss of the right of set-off, which they might have had against Flint, if the action had been brought by him, and he had been indebted to them for assessments or otherwise. But if they, by a valid agreement, engage to pay to a third person the full amount for which they may become liable on a policy, the loss of their right of set-off is the effect of their own act. *Mowry* v. *Todd,* 12 Mass. 281, 284.

It was suggested by the defendants' counsel, that the assent of the president to the assignment of the policy was obtained by means of a representation of the plaintiff, that Flint had conveyed the buildings to him. But as this does not appear on the exceptions, we cannot notice it. As there must be a new trial, the defendants will have an opportunity to show that fact, if they can ; and the question of its effect on the plaintiff's rights will then arise. We may here remark, however, that if the fact be as suggested, it would seem that the defendants have supposed, and that the president has acted on the supposition, that the legal construction of the fifth article of their by-laws is, that the assent of the president and directors to an assignment of a policy, by the assured to his alienee, is of itself a renewal of the policy to the alienee. Whether such a construction is warranted by the terms of that article, is a question on which we intimate no opinion.

*New trial to be had in this court.*

At the new trial, which was before *Metcalf*, J. it appeared that in the application for insurance made by the plaintiff, as agent for, and in the name of said Daniel Flint, the dwelling-house and sheds were represented as of the value of $775, and that the sum insured thereon was $525.

The defendants then contended, 1st, that the assent of the company to the assignment of the policy by said Flint to the plaintiff, was obtained from them by means of fraud and misrepresentation by the plaintiff. 2d. That the plaintiff had fraudulently misrepresented the value of the property insured at the time the insurance was effected. 3d. That the plaintiff had caused the burning of the building by design.

Evidence was introduced for the purpose of supporting all these grounds of defence. As to the second ground, the evidence tended to show that the value of the house and sheds, which were the only buildings burnt, was, at the time of the insurance, and also at the time of the loss, less than $525, the sum insured thereon, and that the damage to the plaintiff was less than that sum. The defendant company was authorized to insure property only to three fourths of its value. The judge instructed the jury that if either of the three grounds of defence was sustained, their verdict should be for the defendants. As to the first and third grounds, no exception was taken to the instructions. The defendants asked the judge to instruct the jury, on the second ground of defence, that if, in answer to the question, " what is the value of each building, exclusive of the land?" the plaintiff made, in fact, a material misrepresentation of the value of the property to be insured, by stating the value materially larger than in fact it was, the plaintiff could, not recover.

The judge declined so to instruct the jury, but instructed them that as the defendants were limited to insure not exceeding three-fourths of the value, they, in determining the sum to be insured, by necessary consequence, fix a valuation at such sum, that the sum insured shall not exceed three fourths of it. That as the valuation is proposed on one side, and after the proposition is considered, it is acceded to on the other, and

the amount insured, and the rate of premium, assessment, and liability established on the same basis, it is, in the highest sense, a valuation by mutual agreement. That a valuation thus made must, in the absence of all fraud, collusion, and misrepresentation, be taken as the best evidence of the value of the premises insured; and that it was for the defendants, in order to sustain their second ground of defence, to show that the plaintiff, by fraud, collusion, or misrepresentation, overstated the value of the insured premises. That the measure of damages, if the jury should find for the plaintiff, was the sum of $525, and interest from the service of the writ; the evidence showing that the house was wholly destroyed by fire. The jury found a verdict for the plaintiff, and assessed the damages according to these instructions, and the defendants excepted thereto.

The case was argued and determined at the October term, 1853.

*J. W. Perry*, (*G. F. Farley* with him,) for the defendants.

*J. G. Abbott*, for the plaintiff.

BY THE COURT. We are all of opinion that the instructions given to the jury were correct. They conformed precisely to the law, as laid down in *Fuller* v. *Boston Mutual Fire Insurance Co.* 4 Met. 206, and *Borden* v. *Hingham Mutual Fire Insurance Co.* 18 Pick. 523, so that, in overruling the exceptions taken to them, we only need refer to those cases.

*Judgment on the verdict.*